## GREGG *v*. LITTLE ROCK CHAMBER OF COMMERCE.

### Opinion delivered October 25, 1915.

1. CORPORATION—POWERS—CHARTER.—The enumeration of the powers of a corporation in its charter implies the exclusion of all others not fairly incidental to those granted.

2. CHAMBER OF COMMERCE—POWERS UNDER CHARTER—NAVIGATION OF RIVER.—The charter of a Chamber of Commerce provided that its purpose was to foster and promote the educational, commercial, industrial, physical and moral development of certain cities. *Held,* the proposed action of the Chamber of Commerce to grant a subsidy for the construction and operation of boats in the navigation of a certain river, in carrying passengers and freight for hire between certain cities, did not transcend its powers under its charter.

Appeal from Pulaski Chancery Court; *J. E. Martineau,* Chancellor; affirmed.

#### STATEMENT BY THE COURT.

This appeal challenges the power of the Little Rock Chamber of Commerce and its Industrial and Development Committee, to grant or give the funds and property

donated to the Chamber of Commerce for the promotion of the general welfare of the Cities of Little Rock and Argenta, the County of Pulaski and the State, in educational, commercial and industrial ways, for subsidizing and establishing a boat line for the navigation of the Arkansas River from Little Rock to Memphis, Tenn.

The complaints allege that the Chamber of Commerce is about to make a contract for the purchase of a steamboat, to cost approximately $30,000, to be operated on the Arkansas River, between Little Rock and Memphis, for carrying freight and passengers for hire, contrary to the articles of incorporation and the constitution and by-laws thereof and have appropriated $50,000 to be used in the purchase of the boats and payment of subsidies to the owners and operators thereof, to induce them to engage in the carriage of freight and passengers for hire, for a term of five years; that when the plaintiff subscribed to the fund it was represented to him that it would be collected for the Chamber of Commerce, and "would be used for industrial and development purposes in Little Rock and vicinity, and that the principal part of said fund would be used for the purpose of locating factories and developing the resources of the City of Little Rock, and Pulaski County, and incidentally of advertising the resources of the State of Arkansas and the opportunities for the development of manufacturing and other industries in the city and State."

It was alleged further that it would be a diversion of the fund from the purpose for which it was raised and so reduce the fund as to create an irreparable injury, and an injunction was prayed to prevent it.

The Chamber of Commerce admitted the allegations of the complaint as to its incorporation and powers and that it was about to execute the contract granting the subsidies for a boat or boats to navigate the Arkansas River, as alleged in the complaint, but denied that it was contrary to its articles of incorporation or beyond its powers. Denied any representations to the parties subscribing to or donating lands in aid of the fund, that

such fund would be used solely in locating factories and developing the resources of the City of Little Rock and incidentally advertising the resources of the State. Alleged that the contracts donating the lands and purchasing them from it were in writing.

The object and purpose of the Little Rock Chamber of Commerce is stated in Article 2 of its constitution, as follows:

"The object and purpose of this organization shall be the upbuilding the city of Little Rock, Argenta, Pulaski County and the State of Arkansas, encouraging and assisting in public improvements of all kinds therein, including streets, highways, sewers, public buildings, and any and all things which are for the public good; locating schools and colleges, libraries, and all things which look toward higher and better educational advantages; locating and developing and assisting in the location and development therein of manufactures and other industries; buying, owning, developing and selling property, real and personal, borrowing money and issuing bonds and other evidences of indebtedness, and executing mortgages or deeds of trust to secure same; conducting a merchants' association, which will bring merchants and parties engaged in trade in closer association and work for the mutual advantage and protection of the same, conducting a board of trade with all the necessary adjuncts, conducting a real estate exchange, which shall unite under rules of business and justice the business of buying, selling and exchanging real estate and for the conduct and control of brokers, agents and others engaged in that line of business; for organizing and conducting any other bureau or bureaus, exchanges, which the board of governors may decide shall be beneficial or necessary in the building up of said cities and State, and for the best interest thereof and of this organization; shall have full power to do any and all things deemed necessary in carrying on any and all of the above objects; to foster and promote the commercial, industrial, phys-

ical and moral development of the cities of Little Rock, Argenta, and vicinity.''

Art. 10, Sec. 6, of the by-laws provides:

An industrial and development committee of the Chamber of Commerce is hereby created. Said committee shall have exclusive control of the disposition of the industrial and development fund raised by the Chamber of Commerce, and the fund shall be paid out only upon drafts or warrants of said committee. The committee shall have the right to make investments of said funds, to make donations and grant aids or subsidies and use it in any manner which a majority may determine upon for public purposes. The section further provides that the committee shall consist of six members, and provides for their term of office, and that it may have the right to establish by-laws, rules, and regulations for the control of its meetings.

It appears from the testimony what representations were made by the canvassers securing the donation and subscriptions to the ''Million-Dollar Fund'' and Mr. Frank B. Gregg, who was president of the Chamber of Commerce at the time, stated that it was represented to him as an inducement to sign a contract for the purchase of certain lands from the Chamber of Commerce that the proceeds would be used for industrial and development purposes by bringing factories to Little Rock. The money was to be used to induce factories to locate in Little Rock. He said: ''At the time the million-dollar fund was raised in 1912 by the Chamber of Commerce, it was not contemplated by the officers of the Chamber of Commerce that any part of the fund would be used in inducing navigation on the Arkansas River. It was contemplated that the fund, when it was raised, would be used in giving bonuses to factories and giving sites, part paying for sites, for factories, and advertising Little Rock and vicinity; in fact, in any way that would help the industrial development of the city.''

Mr. Carl J. Baer testified that he was industrial commissioner of the Chamber of Commerce and made the

campaign for the "million-dollar fund." He said there were no contracts made with the plaintiffs, except those in writing. He stated generally what was necessary to the industrial development of the city, and "freight rate is the real hindrance to the development of Little Rock. Money could not be spent in a more advantageous way than in securing cheaper transportation. The object in subsidizing the boat was to secure cheaper rates, and thereby improve conditions in Little Rock. Without effort to get cheaper transportation the Chamber of Commerce would be very much hindered in the development of Little Rock, and the money expended would not result in material advantage in anything like it would if it expended the money in securing lower rates. Cheaper transportation is necessary in locating schools and colleges and industrial plants, and all things of that kind and character that go to build up a city. Was familiar with Little Rock and its surroundings, and in his opinion there was no other way to secure low rates than by river competition." He stated the purpose of the contract was for the purchase of the boat, that it was the intention of the committee to navigate the river and if necessary to purchase a boat to engage in the freight and passenger traffic between Little Rock and Memphis, and "the operation of a boat line between Little Rock and Memphis will enable citizens of Little Rock to demand of the Interstate Commerce Commission a river and rail rate to all points in the United States, the same as other cities on navigable streams."

The terms of the contract for the building of the boat were shown in evidence. No financial benefit was to be derived by the Chamber of Commerce from the operation of the boat, no profit to be paid it, nor loss to be sustained by it.

*D. K. Hawthorne,* for appellant.

1. The Chamber of Commerce has not the power, under its charter and constitution and by-laws to grant subsidies to an owner of a boat to induce him to engage in navigation upon the Arkansas River. It has no such

powers. Kirby's Dig., §§ 937, 943; 65 Atl. 885; 95 N. E. 90; 14 Wisc. 575; 95 N. E. 93; 61 S. E. 648; 56 Fed. 428; 168 *Id.* 187; 108 S. W. 421; 96 Ark. 556; 95 Pac. 722; 79 Ark. 559; 120 Mass. 435; 140 *Id.* 17.

2. If it has such power, it has not the right to appropriate money for this purpose from a fund which it raised for industrial and development purposes in Little Rock and vicinity. 89 Atl. 685; 120 Mass. 435; 140 *Id.* 17.

*Mehaffy, Reid & Mehaffy* and *Lawrence B. Burrow,* for appellee.

1. The powers of a corporation are to be measured by its charter read in connection with the general laws applicable to such corporations, and whatever under the charter and general laws, reasonably construed, may be fairly considered as incidental to the purposes for which the corporation was created, is not prohibited, but is as much granted as that which is expressed. Thompson on Corp., § 2771; 83 N. E. 408; 127 Ill. App. 476; 101 U. S. 71; Kirby's Dig. § 11, Ch. 31.

2. The contract is not a partnership agreement. 30 Cyc. 349.

3. The act contemplated comes within the powers of the corporation. 10 Cyc. 1097; 23 Atl. 287; 95 Ark. 6; *Ib.* 368; 96 *Id.* 594; 87 *Id.* 587. It is not prohibited. 103 N. W. 685; 5 Wisc. 173; 97 Fed. 843.

4. As to what are "Industrial and Development purposes," see 115 Pac. 867; 23 Fed. 469; 35 Pac. 983.

KIRBY, J., (after stating the facts). The Chamber of Commerce was not organized for pecuniary profit or dividend-making or sharing, but under the statute, providing for the organization of corporations for benevolent purposes, such as boards of trade or chambers of commerce, which statute provides they shall have for carrying out the purposes and objects of their organization such powers as are possessed by other corporations and which may be necessary to their efficient management and the promotion of their purposes. Sections 937-943, Kirby's Digest.

It is insisted that because the terms of the charter designating the purposes of the organization do not expressly state that the corporation shall have power to grant a subsidy for the operation of boats on the Arkansas River, that the contemplated action is beyond its powers. The statement of the object and purposes is broad and inclusive "for the upbuilding of the cities of Little Rock and Argenta, Pulaski County, and the State of Arkansas, encouraging and assisting in public improvements of all kinds therein, including streets, highways, sewers, public buildings and any and all things which are for the public good; locating schools and colleges, locating, developing and assisting in location and development therein, manufactures and other industries, * * * conducting a merchants' association, board of trade, real estate exchange * * * for organizing and conducting any other bureau or bureaus, exchanges, which the board of governors may decide will be beneficial or necessary in the building up of said cities and State, for the best interest thereof and of the organization, shall have full power to do any and all things deemed necessary in carrying on any and all of the above objects to foster and promote the commercial, industrial, physical, and moral development of the cities of Little Rock, Argenta and vicinity.

Thompson says: "The powers of the corporation are to be measured by its charter read in connection with the general laws applicable to such corporations, and whatever under the charter and general laws, reasonably construed, may be fairly considered as incidental to the purposes for which the corporation was created, is not to be taken as prohibited, but is as much granted as that which is expressed." 3 Thompson on Corporations, § 2771.

Ordinarily only such powers and rights can be exercised by corporations under their charters as are clearly comprehended within the words of the act or derived therefrom by necessary implication regard being had to the object of the grant and the charter read in the light

of any general laws which are applicable is the measure of its powers, and such is the case whether the corporation is created by special charter from the Legislature or formed by articles of association under general laws. *Thomas* v. *Railroad Co.*, 101 U. S. 71.

Cyc. says: "The implied powers of a corporation are not limited to such as are indispensably necessary to carry into effect those expressly granted, but comprise all that are necessary in the sense of being appropriate, convenient and suitable for such purposes, including the right to a reasonable choice of means to be employed. They must result from the charter by necessary implication, regard being had to the object and purpose of the corporation," and "if the means employed are reasonably adapted to the ends for which the corporation was created, they come within its implied or incidental powers, although they may not be specifically designated by the act of incorporation." 10 Cyc. 1097.

Our court has said that, "Powers that are essential to the exercise of the powers expressly granted are necessarily implied from those expressly granted and are as much granted as if expressed." *Rachels* v. *Stecher Cooperage Works*, 95 Ark. 6; *Simmons National Bank* v. *Dilley Foundry Co.* 95 Ark. 368.

It is also true and a well settled general rule of law that the power of a corporation to make and take contracts is restricted to the purposes for which it is created and cannot legally be exercised by it for other purposes. *Simmons National Bank* v. *Dilley Foundry Co., supra.*

(1-2)  Of course the enumeration of the powers of a corporation in its charter implies the exclusion of all others not fairly incidental to those granted. The only question here, as said, is whether the proposed action of the Chamber of Commerce to grant a subsidy for the construction and operation of boats in the navigation of the Arkansas River in carrying passengers and freight for hire between Little Rock, Arkansas, and Memphis, Tennessee, transcends its powers. We do not think it does. The purpose of the organization was to foster

and promote the educational, commercial, industrial, physical and moral development of the cities of Little Rock, Argenta and vicinity, and if the establishment and operation of the boat.line as proposed would reasonably tend to any such development, it would easily come within the implied and incidental powers of the corporation being necessary, appropriate and suitable for effecting the purpose.

If it be questionable whether the Arkansas River can be successfully navigated by the granting of the subsidy and the construction and operation of the proposed boat line, that is a matter left for decision to the industrial and development committee of the Chamber of Commerce and the organization itself, and of its decision appellants cannot complain, unless the success of it is so improbable as to show an arbitrary exercise of the power, and waste of the fund.

It is a well recognized fact that accessibility to market and facilities for transportation, at a low and reasonable freight rate, tend greatly to the development and promotion of the local welfare in industrial and commercial ways. This is not disputed by appellants who object chiefly because they think the proposed project is impracticable and will result in failure and loss, forecasting the future from the experience of the past. That however was a matter to be settled by the Chamber of Commerce or its appropriate committee and has been against appellant's contention. We think the right of the appellee to use the funds donated to it to be expended for the promotion of the public welfare of the cities of Little Rock, Argenta, their vicinity and the State, in physical, moral, educational, commercial and industrial ways, includes the power to use it as proposed in the establishment of a boat line for the navigation of the river, under the circumstances.

We do not think it necessary to decide whether a corporation may become a member of a partnership, since this record discloses that there was no attempt or agreement on its part to do so, it being expressly agreed

that the corporation does not share in the profit or loss of the enterprise of the navigation of the river.

The decree is affirmed.